1
2
3
4
5
6
7
8                         NOT FOR CITATION

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  ANTHONY CRAVER,                    )     No. C 02-04629 JF (PR)
                                       )
13                 Petitioner,         )     ORDER DENYING PETITION FOR
                                       )     WRIT OF HABEAS CORPUS AND
14      vs.                            )     DENYING CERTIFICATE OF
                                       )     APPEALABILITY
15  ERNIE ROE, Warden,                 )
                                       )
16                 Respondent.         )
                                       )
17  _____)

18        Petitioner, a state prisoner, filed a pro se habeas petition pursuant to 28 U.S.C.

19  § 2254, challenging his state conviction.  Concluding that the petition stated cognizable

20  claims, the Court ordered Respondent to show cause why the petition should not be

21  granted.  Respondent filed an answer addressing the merits of the petition, and Petitioner

22  filed a traverse.  After reviewing the papers and the relevant portions of the record, the

23  Court concludes Petitioner is not entitled to habeas corpus relief based on the claims

24  presented.  Accordingly, the petition will be denied.

25

26                              **BACKGROUND**

27        The following is a summary of relevant facts from the opinion of the California

28  Court of Appeal affirming judgments against Petitioner and a co-defendant following a

1  joint trial. <u>People v. Deshon</u>, et. al, A087395, slip op. at 2-3, 5-6, 7-9 (June 19, 2001)

2  (Ans., Exh. 7 ("Op.") at 9-10.):

3      In the late evening of May 22 or early morning of May 23, 1998, Petitioner and

4  two of his friends, Deshon and Tyrell, both of whom later were Petitioner's co-

5  defendants, went to the home of Joey Cutrufelli.  All three agreed at trial that they were

6  going to Cutrufelli's home so that Petitioner could pick up something – Petitioner and

7  Tyrell testified that it was drugs, while Deshon testified that it was a pool stick.  Cutrufelli

8  lived with his mother and female cousin, who also were at home at that time.  Each

9  Defendant testified to not knowing of any weapons being brought into the house,

10  although Deshon and Tyrell testified that Petitioner brought a black bag, the contents of

11  which were unknown to them.  After Defendants' arrival at Cutrufelli's home, Petitioner

12  and Cutrufelli spoke about drugs and money, and their conversation escalated into an

13  argument.  The testimony at trial was inconsistent as to what happened and where each of

14  the three Defendants was during the argument.  The argument escalated into violence, and

15  Cutrufelli was shot and killed.  Cutrufelli's cousin testified at trial that Craver and Deshon

16  each had a gun.  The three Defendants fled the scene, and Cutrufelli's mother and cousin

17  called 911.

18      The Defendants each were apprehended within several days of the incident, and

19  criminal proceedings ensued as follows:

20          [Petitioner], Deshon and Tyrrell were charged with murder,
        burglary, attempted robbery, and false imprisonment.  All were
21      charged with two special circumstances in connection with the
        murder: committing the murder while engaged in the commission
22      of a burglary and committing the murder while engaged in the
        commission of an attempted robbery (Pen. Code, § 190.7, sub.
23      (a)(17)).
            The information also alleged numerous firearm use
24      enhancements. Among other things, [Petitioner] was charged with
        personally using a firearm during the commission of the murder
25      within the meaning of Penal Code section 12022.53, subdivision
        (b).  That provision applies to a defendant who personally used a
26      firearm whether or not the firearm was operable or loaded.
        Deshon was charged with personally using a firearm during the
27      commission of the murder within the meaning of Penal Code
        section 12022.53, subdivision (d).  That provision applies to a
28      defendant who intentionally and personally discharged a firearm

1
2
3
4
5
6
7
8
9
10

and proximately caused death to any person other than an accomplice.

The joint jury trial began on March 29, 1999. The jury began deliberations on April 29 and returned a verdict on May 5. Deshon and [Petitioner] were found guilty of murder, attempted robbery and false imprisonment. The jury found true the special circumstance that Deshon and [Petitioner] committed the murder while engaged in the commission of an attempted robbery and also found true the related firearm use and arming allegations. Thus, the jury accepted the prosecutor's theory that Deshon actually shot Cutrufelli. The jury could not agree on a verdict with respect to Tyrrell.

Deshon was sentenced to life in prison without parole for the murder, a consecutive term of 25 years to life for the personal firearm use enhancement, and another consecutive term of 6 years and 8 months for other convictions and enhancements. [Petitioner] was sentenced to life in prison without parole for the murder conviction, and a consecutive determinate term of 17 years and 8 months for the other convictions and enhancements.

11    (Op. at 9-10.)

12                                **DISCUSSION**

13    I.    Standard of Review

14          This Court will entertain a petition for a writ of habeas corpus "in behalf of a

15    person in custody pursuant to the judgment of a state court only on the ground that he is in

16    custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

17    § 2254(a). The Court may not grant a petition with respect to any claim that was

18    adjudicated on the merits in state court unless the state court's adjudication of the claim:

19    "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

20    clearly established Federal law, as determined by the Supreme Court of the United States;

21    or (2) resulted in a decision that was based on an unreasonable determination of the facts

22    in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

23          "Under the 'contrary to' clause, a federal habeas court may grant the writ if the

24    state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

25    question of law or if the state court decides a case differently than [the] Court has on a set

26    of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13

27    (2000). "Under § 2254(d)(1)'s 'reasonable application clause,' a federal habeas court may

28    not issue the writ simply because the court concludes in its independent judgment that the

1   relevant state-court decision applied clearly established federal law erroneously or

2   incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

3        A federal habeas court making the "unreasonable application" inquiry should ask

4   whether the state court's application of clearly established federal law was "objectively

5   unreasonable." Id. at 409.  The "objectively unreasonable" standard does not equate to

6   "clear error" because "[t]hese two standards . . . are not the same.  The gloss of clear error

7   fails to give proper deference to state courts by conflating error (even clear error) with

8   unreasonableness." Lockyer v. Andrade, 123 S. Ct. 1166, 1175 (2003).

9        Under U.S.C. § 2254(d)(2), a federal court may grant the habeas writ if it concludes

10  that the state court's adjudication of the claim "resulted in a decision that was based on an

11  unreasonable determination of the facts in light of the evidence presented in the State court

12  proceeding." 28 U.S.C. §2254(d)(2).  The Court must presume correct any determination

13  of a factual issue made by a state court unless the petitioner rebuts the presumption of

14  correctness by clear and convincing evidence. 28 U.S.C § 2254(e)(1).

15  II.   Legal Claims and Analysis

16       As grounds for federal habeas relief, Petitioner asserts the following claims: (1) the

17  trial court's ruling permitting co-defendant Deshon to testify in a narrative statement

18  violated Petitioner's rights to due process and to be present at critical stages of his trial; (2)

19  the trial court's jury instructions violated Petitioner's rights to due process and to a jury

20  trial on all elements of the offense; (3) the trial court's admission of Petitioner's

21  involuntary statement violated Petitioner's rights against self-incrimination and to due

22  process; (4) there was insufficient evidence to support the jury's finding of a felony

23  murder special circumstance; and (5) the trial court's admission of the 911 tape violated

24  Petitioner's right to due process.

25       A.   Trial court's decision to allow Petitioner's co-defendant to testify in

26            narrative form

27       Petitioner's first claim is that the trial court's ruling permitting Deshon to testify in

28  a narrative statement violated Petitioner's rights to due process and to be present at critical

stages of his trial. (Pet. at 1.) During trial, the judge asked if Deshon would testify. (Op. at 29.) Deshon's attorney requested an *in camera* hearing in order to resolve a dispute that counsel characterized as being "'like a <u>Marsden</u>[1] motion.'" (<u>Id.</u>) The judge conducted the hearing with Deshon, his attorney, and the court reporter. (<u>Id.</u>) Afterwards, the judge explained in court that "'Mr. Deshon is taking the stand. Choosing to do that, he will be testifying in a narrative fashion. The court will not allow any objection to that style of presentation. It is subject to full cross, normal cross-examination.'" (<u>Id.</u>)

The trial judge discussed the procedures for Deshon's testimony with all defense counsel present, and responded to counsels' concerns by "admonish[ing] Deshon to confine his testimony to personal knowledge and to speak slowly and to stop speaking if objections were made." (<u>Id.</u>) The trial judge also allowed Deshon's testimony to be tape recorded, and agreed to allow a recess after Deshon's testimony so that all defense counsel could review the tape before cross-examining Deshon. (<u>Id.</u>) After Deshon's direct testimony, including the "relatively short and straightforward narrative testimony," "the prosecutor and attorneys for the other defendants each conducted comparatively lengthy cross-examinations" without requesting a recess. (<u>Id.</u> at 30.)

1.   <u>Due process</u>

Petitioner argues that Deshon only could have been permitted to testify in a narrative fashion because Deshon's attorney knew that his client was going to commit perjury.[2] (Pet. at 2.) He contends that for the trial court and Deshon's attorney

---

[1] A <u>Marsden</u> motion is a motion made by a criminal defendant who wishes to discharge his or her attorney. <u>See</u> <u>People v. Marsden</u>, 2 Cal.3d 118 (1970). The defendant must show that the attorney's representation is inadequate or that the defendant and attorney are "embroiled in such an irreconcilable conflict that ineffective representation is likely to result." <u>People v. Barnett</u>, 17 Cal.4th 1044, 1085 (1998) (internal citations omitted).

[2] Both Petitioner and the California Court of Appeal refer to <u>People v. Johnson</u>, 62 Cal.App. 4th 608 (1998), which held that where a defendant wishes to testify and an attorney believes that the defendant's testimony may constitute perjury, using "the narrative approach" to testimony would allow a defendant to exercise his or her right to

1 "knowingly [to] allow[] Deshon to testify falsely about Petitioner's role in the charged

2 crimes . . . violated [P]etitioner's rights to due process and a fundamentally fair trial." (Id.

3 at 4.)

4      The state appellate court found this argument unpersuasive and rejected the claim,

5 explaining that whether Deshon's narrative testimony was true was not for the trial judge

6 or Deshon's attorney to decide, but for the jury. (Op. at 33.) The case was one in which

7 "[t]hree defendants and two witnesses gave different and often conflicting testimony about

8 the very same events." (Id.) The state appellate court noted that the fact that Deshon's

9 attorney may not have believed a portion of Deshon's testimony did not necessarily render

10 the testimony untrue. (Id.)

11      "[A] conviction obtained by the knowing use of perjured testimony is

12 fundamentally unfair, and must be set aside if there is any reasonable likelihood that the

13 false testimony could have affected the judgment of the jury." United States v. Agurs, 427

14 U.S. 97, 103 (1976). In fact, a conviction based in part on perjured testimony or false

15 evidence, even perjured testimony or false evidence presented in good faith, does not

16 comport with fundamental fairness. See Hayes v. Brown, 399 F.3d 972, 980 (9th Cir.

17 2005) (prosecutor's action in presenting false evidence to the jury and by failing to correct

18 the record (that no agreement had been reached to favorably dispose of pending felony

19 cases of main witness) violated petitioner's rights, even where testifying witness did not

20 commit perjury because he had not been informed of prosecutor's agreement with his

21 defense counsel); Killian v. Poole, 282 F.3d 1204, 1209 (9th Cir. 2002) (key prosecution

22 witness' perjury about deal in exchange for his testimony deprived defendant of right to

23 trial by jury).

24      Ultimately, relief will depend on whether with the perjured testimony or false

25 evidence Petitioner received a fair trial. See Kyles v. Whitley, 514 U.S. 419, 434 (1995)

26 _____

27 rtestify while keeping the attorney from violating his or her ethical obligations from

28 aiding a client in committing perjury. (Pet. at 3, Op. at 30.)

1  (using test in context of suppression of evidence); <u>Hall v. Director of Corrections</u>, 343

2  F.3d 976, 984 (9th Cir. 2003) (granting writ where informant's falsified notes that

3  incriminated defendant were material where no physical or forensic evidence connected

4  defendant with the crime and defendant's confession contained multiple inconsistencies

5  and inaccuracies).  A petitioner can obtain relief "by showing that the perjured testimony

6  or false evidence could reasonably be taken to put the whole case in such a different light

7  as to undermine confidence in the verdict." <u>Kyles</u>, 514 U.S. at 435.[3]  Alternatively, relief

8  will be granted where the court cannot say "'with fair assurance . . . that the judgment was

9  not substantially swayed by the error.'" <u>Killian</u>, 282 F.3d at 1209 (quoting <u>O'Neal v.</u>

10  <u>McAninch</u>, 513 U.S. 432, 437-38 (1995)) (footnote omitted) (granting relief where witness

11  perjured himself several times and was the "make-or-break witness" for the state).

12      Here, the Court agrees with the state appellate court's rejection of this claim, as the

13  link between Deshon's narrative testimony and Petitioner's constitutional rights is tenuous

14  at best.  Petitioner fails even to make the threshold showing that Deshon's narrative

15  testimony was perjury.  There was no indication that the trial court knew whether

16  Deshon's account of the events was false.  <u>Compare</u> <u>Morales v. Woodford</u>, 388 F.3d 1159,

17  1179 (2004) (holding that presentation of testimony where witness recanted her testimony

18  "over a decade after the trial" did not render presentation of the testimony error because

19  because it did not constitute "*knowing* presentation of perjury" during the trial) (emphasis

20  added), <u>with</u> <u>Hayes</u>, 399 F.3d at 980 (holding that the prosecutor knew whether the

21  witness had made an agreement with the government concerning disposal of his own

22  felony cases).      Even if the trial court erred in permitting Deshon to testify in

23  narrative form, Petitioner is not entitled to habeas relief based on this claim.  Petitioner has

24  failed to show how Deshon's narrative testimony influenced the verdict in any significant

25  way.  Moreover, as the state appellate court explained and Petitioner does not contest,

26  _____

27      [3] Once constitutional error has been found under this test, it subsequently cannot be
found harmless under <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993).  <u>See</u> <u>Kyles</u>, 514 U.S.
28  at 436 & n.9.

1  Petitioner's attorney was allowed to object during Deshon's testimony, to record the

2  testimony, and then to cross-examine Deshon at length. (Id. at 29.)  None of the defense

3  attorneys requested additional time to listen to the recording before conducting cross-

4  examination. (Id.)  Petitioner's attorney, Tyrell's attorney, and the prosecutor each had a

5  full opportunity to expose any inconsistencies or falsehoods in Deshon's narrative to the

6  jury. (Id.)  This Court cannot conclude that Deshon's narrative testimony, even if false,

7  would place the entire case in such a different light as to undermine confidence in the

8  verdict. Cf. Kyles, 514 U.S. at 435.  The state appellate court's rejection of the claim thus

9  was not contrary to or an unreasonable application of clearly established federal law. See

10  U.S.C. § 2254(d)(1).

11              2.      Right to be present

12       Petitioner also argues that the trial court's decision to allow the *in camera* hearing

13  to occur outside the presence of Petitioner and his attorney violated Petitioner's right to be

14  "present at all critical stages of his trial" and to have the assistance of his attorney at all

15  such stages. (Pet. at 4-5.)

16       The state appellate court concluded that the *in camera* hearing was not a critical

17  stage of Petitioner's trial, given that the purpose of the hearing was resolve a conflict

18  between Deshon and his attorney. (Op. at 30.)  The court observed that Petitioner's

19  constitutional rights were unaffected by the hearing, as Deshon's testimony still was

20  subject to cross-examination. (Op. at 29, 35.)

21       The Supreme Court has recognized that "the right to personal presence at all critical

22  stages of the trial . . . [is a] fundamental right[] of each criminal defendant." Rushen v.

23  Spain, 464 U.S. 114, 117 (1983).  Due process protects a defendant's right to be present

24  "at any stage of the criminal proceeding that is critical to its outcome if his presence would

25  contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745

26  (1987); see, e.g., United States v. Mitchell, 502 F.3d 931, 973 (9th Cir. 2007) (en banc)

27  (no violation of rights under Due Process Clause or Confrontation Clause where trial judge

28  met ex parte with United States marshals to discuss security concerns regarding transfer of

1    case to another venue and again before penalty phase after defendant announced his

2    refusal to be present for that phase of trial); Sturgis v. Goldsmith, 796 F.2d 1103, 1108

3    (9th Cir. 1986) (finding due process right to be present at competency hearing determining

4    competency to stand trial).  Deprivation of the right to be present at all critical stages and

5    to be represented by counsel is subject to harmless error analysis.  Campbell v. Rice, 408

6    F.3d 1166, 1172 (9th Cir. 2005) (noting that the Supreme Court has never held that

7    deprivation of the right to be present is an inherently harmful deprivation that would

8    require automatic reversal without engaging in harmless error analysis).

9         Here, the state appellate court held correctly that the *in camera* hearing involving

10   Deshon and his attorney was not a critical stage of Petitioner's trial.  The issue at hand was

11   a conflict between Deshon and his attorney, (Op. at 30), and there is no showing that

12   Petitioner's presence "would [have] contributed to the fairness of the procedure."  Stincer,

13   482 U.S. at 745.  As described above, the hearing did not affect Petitioner's constitutional

14   rights: his attorney was allowed to object during Deshon's testimony, record the

15   testimony, and conduct a lengthy cross-examination.  (Id. at 29.)  Cf. Mitchell, 502 F.3d at

16   973; Sturgis, 796 F.2d at 1108.

17        Moreover, any error on the part of the trial court was harmless.  As described

18   above, Petitioner has not shown how Deshon's narrative testimony implicated Petitioner's

19   constitutional rights or influenced the outcome of the trial.  Deshon's testimony was brief

20   and Petitioner's counsel had ample opportunity to discredit it.  (Op. at 29-30.)  Cf.

21   Campbell, 408 F.3d at 1172-73 (no error where petitioner could not demonstrate adverse

22   effects of being excluded from an in-chambers conference).  The state appellate court's

23   conclusion thus was not contrary to or an unreasonable application of clearly established

24   federal law.  See U.S.C. § 2254(d)(1).

25        B.    Jury instruction on felony-murder special circumstances

26        Petitioner's second claim is that the trial court's jury instructions with respect to

27   felony-murder special circumstance violated his rights to due process and to a jury trial on

28   all elements of the offense.  (Pet. at 8.)  Specifically, Petitioner argues that the trial court

1   erred in "omitt[ing] the requirement that the act resulting in death was committed to

2   advance an independent felonious purpose," (id.), in violation of Apprendi v. New Jersey,

3   which holds that "[o]ther than the fact of a prior conviction, any fact that increases the

4   penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury,

5   and proved beyond a reasonable doubt."  530 U.S. 466, 489 (2000).

6         Special circumstance felony murder is distinct from felony murder as such, which is

7   defined as "murder… which is committed in the perpetration of, or attempt to perpetrate,

8   arson, rape, carjacking, robbery, burglary, mayhem, kidnapping."  CAL. PENAL CODE §

9   189.  All felony murders are murders of the first degree, id., and are punishable by a term

10  of 25 years to life, imprisonment for life without the possibility of parole, or the death

11  penalty.  CAL. PENAL CODE § 190(a).  Special circumstance felony murder is murder that

12  "was committed while the defendant was engaged in, or was an accomplice in, the

13  commission of, attempted commission of, or the immediate flight after committing, or

14  attempting to commit [inter alia, robbery]."  CAL. PENAL CODE § 190.2(a)(17).  Where the

15  defendant was convicted by a jury, the jury must make a special finding on the truth of the

16  special circumstance.  CAL. PENAL CODE § 190.4(a), (b).  A defendant found guilty of

17  committing felony murder where a special circumstance applies receives imprisonment for

18  life without the possibility of parole or the death penalty.  CAL. PENAL CODE 190.2(a).

19        The  trial court gave the following jury instructions with regard to felony murder:

20            Defendants are accused . . . in Count I of having committed
       the crime of murder, a violation of Penal Code Section 187.  Every
21     person who unlawfully kills a human being during the commission
       or attempted commission of residential burglary and/or robbery is
22     guilty of the crime of murder in violation of Section 187 of the
       Penal Code.
23            A killing is unlawful if it was neither justifiable nor
       excusable.  In order to prove this crime, each of the following
24     elements must be proved: One, a human being was killed; two, the
       killing was unlawful; and three, the killing occurred during the
25     commission or attempted commission of residential burglary and/or
       robbery.
26            The unlawful killing of a human being, whether intentional,
       unintentional, or accidental, which occurs during the commission or
27     attempted commission of the crime of residential burglary and/or
       robbery is murder of the first degree when the perpetrator had the
28     specific intent to commit that crime.

1
2

> The specific intent to commit residential burglary and/or robbery in the commission or attempted commission of such a crime must be proved beyond a reasonable doubt.

3 (Reporter's Transcript ("RT") at 2803-04.)

4 The trial court later gave instructions with regard to felony murder special

5 circumstance, quoted below in relevant part:

6
7
8
9
10

> In order to find a special circumstance alleged in this case to be true or untrue, you must agree unanimously.  You will state your special finding as to whether this special circumstance is or is not true on the form that will be supplied., verdict form [sic].
>     To find that special circumstances referred to in these instructions as murder in the commission of residential burglary and/or attempted robbery is true, it must be proved that the murder was committed while the defendant was engaged in the commission or attempted commission of a residential burglary and/or robbery.

11 (Id. at 2817.)

12 The state appellate court explained that to find the felony murder special

13 circumstance allegation true, the jury must make a special finding that the defendant killed

14 "in order to advance [an] independent felonious purpose," (Op. at 39, citing People v.

15 Berryman, 6 Cal.4th 1048, 1088 (1993), overruled on other grounds by People v. Hill, 17

16 Cal. 4th (1998) (internal citations omitted)), or that the defendant had "[c]oncurrent intent

17 to kill and to commit an independent felony," (Op. at 39-40, citing People v. Raley, 2

18 Cal.4th 870, 903 (1992)).  In contrast, where the commission of the independent felony is

19 incidental to the murder, the defendant is only guilty of felony murder.  (Op. at 39, citing

20 People v. Green, 27 Cal.3d 1, 59-62 (1980) (defendant was not guilty of felony murder

21 special circumstance where he committed robbery in order to conceal the identity of the

22 victim after the murder).)

23 The state appellate court held that clarification of the scope of the felony murder

24 special circumstance is required only where the evidence would warrant a clarification,

25 and that none of the defendants presented such evidence.  (Op. at 40, finding that at trial,

26 none of the defendants "advanced the theory that Deshon went to Cutrufelli's house on the

27 night of the shooting for the sole purpose of killing him.")  The court concluded that:

28

> [T]he overwhelming evidence relevant to the issue of intent was

1

2
that [Petitioner], Tyrrell and Deshon went to Cutrufelli's house for
the purpose of collecting drugs or money. The only evidence
arguably inconsistent with this conclusion was Deshon's testimony
that the group went to pick up [Petitioner's] pool sticks. There is no
evidence that Deshon's sole purpose for going to Cutrufelli's house
was to murder him. Indeed, the evidence was undisputed that
Deshon had not previously met Cutrufelli.

3

4

5   (Op. at 41.)

6        The state appellate court also rejected Petitioner's claim that the attempted robbery

7   was merely incidental to the murder of Cutrufelli.[4] (Op. at 41-42.) Petitioner cited

8   evidence that Deshon made comments indicating that he might physically harm someone,

9   but the appellate court noted that Deshon denied making these comments, and that

10  Petitioner's concurrent intent still would establish the special circumstance. (Id.)

11  Petitioner also contended that Deshon may have had the intent to commit murder because

12  Deshon "had nothing to gain by robbing Cutrufelli" and that the murder did not advance a

13  robbery because the defendants did not actually rob Cutrufelli. (Id. at 42.) The state

14  appellate court pointed out that the record was "silent on these points" and that Deshon's

15  attorney actually cited the evidence to support the proposition that Deshon lacked a motive

16  to kill Cutrufelli. (Id.)

17       The state appellate court also held that even if a clarification should have been

18  given, Petitioner did not "adequately request" an instruction on independent felonious

19  purpose. (Op. at 37.) Although Petitioner requested jury instructions that referred to

20  whether the defendants had independent felonious intent when they committed the murder,

21  neither Petitioner nor the other defendants objected when the trial court deleted those

22  references. (Id. at 37-38.)

23       Finally, the state appellate court concluded that any trial court instructional error

24  was harmless because it was not prejudicial. (Id. at 42.) Specifically, the appellate court

25

26       [4] The state appellate court also corrected Petitioner's characterization of a
    comment made by the prosecutor in his closing argument. (Op. at 42.) Petitioner argued

27  that the prosecutor said that he did not have to prove that "the murder was committed to
    advance the attempted robbery." (Id.) The court explained that the prosecutor said only

28  that he did not have to establish a motive for killing Cutrufelli. (Id.)

1   found that no evidence supported the claim that Deshon's only purpose in shooting the

2   victim was to commit murder.  (<u>Id.</u>)   The appellate court also noted that the jury already

3   had found that Deshon had an independent felonious purpose because it found Deshon and

4   Petitioner guilty of attempted robbery, and specific intent is an element of attempted

5   robbery.  (<u>Id.</u>)

6        Giving a jury instruction that "omits a necessary element of the crime" is a

7   "constitutional error," because the incomplete instruction relieves the state of its burden of

8   proving all elements of the crime beyond a reasonable doubt.  <u>Ho v. Carey</u>, 332 F.3d 587,

9   592 (9th Cir. 2003); <u>see, e.g.</u>, <u>Polk v. Sandoval</u>, 503 F.3d 903, 910 (9th Cir. 2007)

10   (instruction that eliminated element of deliberation from first degree murder by instructing

11   jury to find willful, deliberate and premeditated murder if it found premeditation violated

12   due process); <u>Ho</u>, 332 F.3d at 593 (finding jury instructions "erroneous" rather than

13   merely ambiguous, where they included an uncorrected erroneous instruction that second-

14   degree murder could be based on a finding of general intent, but also included an accurate

15   description of the elements of second-degree murder, including specific intent).

16        However, even if there is a constitutional error, a habeas petitioner is not entitled to

17   relief unless the instructional error "'had substantial and injurious effect or influence in

18   determining the jury's verdict.'"  <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993)

19   (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)).  In other words, habeas

20   relief may be granted only if the error resulted in "actual prejudice."  <u>Id.</u> (citation omitted);

21   <u>see, e.g.</u>, <u>Coleman v. Calderon</u>, 210 F.3d 1047, 1051 (9th Cir. 2000) (finding <u>Brecht</u> error

22   where "at the very least" the court could not "'say with fair assurance . . . that the

23   judgment was not substantially swayed by the [instructional] error.'") (internal citations

24   omitted).

25        This Court concludes that the instructions given did not adequately clarify that a

26   special circumstance felony murder allegation should not be found true where the felony is

27   only incidental to the murder.  The felony murder instructions required the jury to find that

28   the murder was committed "during the commission or attempted commission of the

1  [independent felony]." (RT at 2803-04.) The special circumstance instructions given here

2  conveyed the same meaning: the jury had to find that "the murder was committed while

3  the defendant was engaged in the commission or attempted commission of a residential

4  burglary and/or robbery." (Id. at 2817.) The latter instructions did not clarify that the

5  defendants had to have either concurrent intent to murder and to commit another felony,

6  Raley, 2 Cal. 4th at 903, or that they committed the murder in order to advance an

7  independent felony, Berryman, 6 Cal.4th at 1088.

8      However, this Court agrees with the California Court of Appeal that any error was

9  harmless. As noted by the state appellate court, "overwhelming evidence" showed that the

10  defendants went to Cutrufelli's home to rob him, (Op. at 41-42), that none of the

11  defendants argued at trial that the purpose of going to Cutrufelli's home was to murder

12  him, (id. at 40), and that any new arguments raised by Petitioner on appeal are

13  unpersuasive (id. at 41-42). Under these circumstances, this Court cannot conclude that

14  the instructional error "had substantial and injurious effect or influence in determining the

15  jury's verdict,'" Brecht, 507 U.S. at 633, because the jury likely would have reached the

16  same verdict even if the instructions had been clearer. Based on the evidence at trial, the

17  jury could have found that the defendants committed murder in order to advance their

18  attempted robbery, cf. Berryman, 6 Cal.4th at 1088, or that the defendants had concurrent

19  intents to commit murder and robbery, cf. Raley, 2 Cal. 4th at 903. Accordingly, the state

20  appellate court's rejection of Petitioner's claim of instructional error was not contrary to or

21  an unreasonable application of clearly established federal law, nor was it an unreasonable

22  determination of the facts presented. See U.S.C. § 2254(d).

23      C.    Admission of Petitioner' statement to police

24      Petitioner's third claim is that the trial court's admission of Petitioner's post-arrest

25  statement to police and a black bag taken from the crime scene violated Petitioner's rights

26  against self-incrimination and to due process. (Pet. at 13.) After Petitioner was arrested

27  on June 2, 1998, Detective Vanderpool recorded a conversation between himself and

28  Petitioner around 2:55 a.m. (Op. at 19.) Before beginning the conversation, Vanderpool

1   read Petitioner his <u>Miranda</u> rights, and Petitioner stated that he understood his rights and

2   signed a waiver form.  (<u>Id.</u>)  During the conversation, Petitioner asked several times

3   whether they were being recorded, and Vanderpool assured him that they were not.  (<u>Id.</u> at

4   19-21.)  Vanderpool also stated that cooperating would "help" Petitioner, and that

5   anything Petitioner said would not "hurt" him any more "at this point."  (<u>Id.</u> at 20.)  At one

6   point, Petitioner asked Vanderpool about his black bag, which still was at the crime scene.

7   (<u>Id.</u>)  The bag subsequently was retrieved and used in evidence at trial.  (<u>Id.</u> at 22.)  Later

8   in the conversation, Vanderpool told Petitioner that the district attorney's office would

9   consider any information provided by Petitioner and "make their . . . decisions"

10  accordingly.  (<u>Id.</u> at 21.)  After Petitioner expressed concern about receiving the death

11  penalty, Vanderpool assured him that he would not because he had no previous strikes.

12  (<u>Id.</u>)

13       At trial, Petitioner filed two motions – one to preclude the use of his statements to

14  Vanderpool and a second to suppress the use of the black bag obtained from the crime

15  scene after Petitioner's conversation with Vanderpool – on the grounds that his statements

16  to Vanderpool were involuntary because: 1) he was under the influence of drugs and

17  alcohol during the conversation; and 2) Vanderpool gave Petitioner "assurances of

18  leniency and promises that his statement would not be used against him."  (Op. at 22.)  In

19  his federal habeas petition, Petitioner focuses on the fact that Vanderpool gave assurances

20  that Petitioner's statements would be "off the record."  (Pet. at 17.)

21       The trial court denied both motions and ultimately found that Petitioner's

22  statements were voluntary.  (Op. at 23.)  First, the trial court found that Petitioner took the

23  drugs of his own volition, that the evidence did not show that Vanderpool "knowingly

24  took advantage" of Petitioner's state, and that Petitioner gave "a rational statement."  (<u>Id.</u>)

25  Second, as to promises of leniency, the trial court conceded that Vanderpool had told

26  Petitioner that he would not receive the death penalty, but noted that this statement

27  appeared on page 68 of the 99-page transcript of the conversation, by which point

28  Petitioner already had given "most of [his] incriminating statements."  (<u>Id.</u>)  The trial court

1   found that apart from the statement about the death penalty, Vanderpool did not make "any

2   specific promises" to Petitioner, and only "encouraged [Petitioner] to cooperate" while

3   "ma[king] it clear that the district attorney would make the decision as to leniency."  (Id.)

4   Finally, although Vanderpool lied to Petitioner about whether his statements were being

5   recorded, the trial court found that Vanderpool's assurances were not "reasonably likely to

6   produce an untrue statement" by Petitioner.  (Id.)

7       The state appellate court affirmed the trial court's conclusions and made its own

8   findings.  (Id. at 25-28.)  It found that the evidence showed that Petitioner "wanted to

9   make a deal and that he was willing to give information about this and other crimes to get

10  that deal."  (Id. at 25.)  Petitioner's reluctance did not come from speaking to the police as

11  such but whether others would learn that he had given information to the police about

12  them.  (Id.)  Petitioner's requests that the conversation be "off the record" were not made

13  because Petitioner feared that the information would be used against *him*, but because he

14  did not want others to find out that he had spoken with the police.  (Id. at 27-28.)

15      To determine the voluntariness of a confession, a court must consider the effect that

16  "the totality of all the circumstances" had upon the will of the defendant.  Schneckloth v.

17  Bustamonte, 412 U.S. 218, 226-27 (1973).  Courts will consider factors such as use of

18  coercive tactics, including "failure . . . to advise the suspect of his rights," and "any direct

19  or implied promises of a benefit," as well as "the length of the interrogation, its location,

20  and its continuity."  Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) (internal

21  citations omitted).

22      A defendant's voluntary ingestion of drugs or other substances prior to a statement

23  does not automatically render his statement involuntary.  United States v. Heller, 551 F.3d

24  1108, 1112-13 (9th Cir. 2009) (rejecting defendant's argument that his ingestion of

25  Tylenol® with codeine the morning of his confessions rendered his confessions

26  involuntary: defendant did not tell officers that he had taken medication, defendant

27  appeared to be alert and able, atmosphere of interview was friendly and cordial, interview

28  was only 2 hours, and defendant was repeatedly told that he was free to leave; that

1   defendant took medication triggered question of whether he was "unable to exercise free

2   will due to an impaired mental state" which was also rejected).  At the same time, a

3   promise of leniency from interrogators may render a defendant's confession involuntary.

4   Moore v. Czerniak, 574 F.3d 1092, 1103 n.10 (9th Cir. 2009) (holding that district court

5   did not err in finding that defendant's confession was involuntary because it was given "in

6   response to a false promise that the charges against him would be reduced if he confessed

7   to accidentally killing [the victim]").  However, misrepresentations by interrogators do not

8   render a defendant's confession involuntary where the defendant "remain[s] in control of

9   his responses" and there is no evidence "that his will was overborne'" during the

10  interrogation.  Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005).

11          Respondent argues that Petitioner's claim that he was under the influence of drugs

12  does not appear in the instant federal petition and has been waived.  (Ans. at 16.)

13  Although Petitioner raises the claim in his traverse, (Trav. at 6-9), Petitioner was required

14  to "specify *all* the grounds for relief available to [him]" and to "state the facts supporting

15  each ground" in his initial habeas petition.  Rule 2(c), Rules Governing Section 2254

16  Cases in the United States District Courts, 28 U.S.C. foll. § 2254 (emphasis added).

17          Even if Petitioner had properly raised the claim in his petition, it would not entitle

18  him to habeas relief.  The state trial court's factual findings supported its legal conclusions

19  that Vanderpool's behavior was reasonable and that Petitioner's statements were

20  voluntary: Petitioner chose to ingest the drugs himself; he had enough presence of mind to

21  say that he already knew his Miranda rights and did not need to hear them again; he still

22  was able to make a rational statement despite having ingested drugs; and the evidence did

23  not show that Vanderpool knew of Petitioner's state and took advantage of it by

24  questioning him anyway.  (Op. at 23.)  Cf. Heller, 551 F.3d at 1112-13.  Petitioner does

25  not contest any of these findings.

26          Petitioner's second argument about promises of leniency also is unpersuasive.  The

27  trial court found that none of Vanderpool's statements could be interpreted as a promise in

28  exchange for information, except for the statement that Petitioner would not receive the

1    death penalty.  (Op. at 23.)  However, that assurance came late in the conversation after

2    Petitioner had already made most of his incriminating statements.  (Id.)  Cf. Moore, 574

3    F.3d at 1103 n.10 (promises were coercive where interrogating officers "repeatedly told

4    [petitioner] that they would 'go to bat for him'" and "convince[d]" petitioner that

5    confessing would result in a more lenient sentence for him, as had happened with

6    petitioner's brother).

7         Finally, the California Court of Appeal properly rejected Petitioner's argument that

8    Vanderpool's misrepresentations about the conversation being "off the record" rendered

9    Petitioner's statements involuntary.  Both state courts concluded that Vanderpool lied

10   about whether their conversation was taped, but neither concluded that Petitioner's

11   statements thus were involuntary.  (Id. at 23-28.)  Petitioner initiated the conversation and

12   made "rational statement[s]."  (Id. at 23, 28.)  Cf. Juan H., 408 F.3d at 1273 (although

13   interrogators gave misrepresentations about consequences of admitting to crimes,

14   petitioner's statements were voluntary where he remained in control of his responses and

15   showed no evidence of having his will overcome).

16        Although Petitioner argues that his statements were involuntary, he has not shown

17   that the state courts' assessments of his conversation with Vanderpool were an

18   "unreasonable determination of the facts in light of the evidence presented in the State

19   Court proceeding."  28 U.S.C. § 2254(d).  A challenge to the state courts' findings of fact

20   "may be based on the claim that the finding is unsupported by sufficient evidence, that the

21   process employed by the state court is defective, or that no finding was made by the state

22   court at all."  Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir. 2004).[5]  Petitioner's bare

23   assertion that his statements were involuntary is insufficient to show that the state courts

24   made an unreasonable determination of the facts.  Cf. Id. at 1005-06 (finding that the state

25   _____

26        [5] Respondent refers to 28 USC section 2254(e)(1), which states that state court
     findings of fact are presumed correct unless the petitioner rebuts the presumption with
27   "clear and convincing evidence."  However, this inquiry does not occur unless the
     petitioner introduces new evidence in federal court.  Petitioner has not done so here.  See
28   Taylor, 366 F.3d at 1000.

1  trial court made an unreasonable determination of the facts when it failed to consider the

2  testimony of a witness who corroborated defendant's version of the facts, where no

3  witness corroborated the interrogating detective's version).

4       D.   Sufficiency of evidence showing that Petitioner acted with reckless disregard

5            for human life

6       Petitioner claims that there was insufficient evidence to support the jury's finding

7  that he acted with reckless disregard for human life.  (Pet. at 21-23.)

8       The state appellate court found that there was "substantial evidence" to support the

9  jury's finding.  (Op. at 36.)  Petitioner gave Deshon drugs, "enlisted" him to "forcibly

10 collect on a drug debt," "supplied the weapons" used at the murder victim's home,

11 instigated the conflict with the victim, and left the home after the murder victim was shot.

12 (Id.)

13      The Due Process Clause "protects the accused against conviction except upon proof

14 beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

15 charged."  In re Winship, 397 U.S. 358, 364 (1970).  A state prisoner who demonstrates

16 that the evidence in support of his or her conviction would not lead a rational trier of fact

17 to have convicted is thus entitled to habeas relief, see Jackson v. Virginia, 443 U.S. 307,

18 321 (1979).  See, e.g., Wigglesworth v. Oregon, 49 F.3d 578, 582 (9th Cir. 1995) (writ

19 granted where Oregon procedure of allowing lab reports regarding drug analyses to be

20 admitted into evidence without authenticating testimony relieved state of its burden to

21 prove beyond reasonable doubt all elements of crime charged); Martineau v. Angelone, 25

22 F.3d 734, 739-43 (9th Cir. 1994) (writ granted where evidence found insufficient to prove

23 elements of child abuse offense).

24      A federal court reviewing a state conviction does not decide whether it would also

25 have convicted the defendant based on the evidence given.  Payne v. Borg, 982 F.2d 335,

26 338 (9th Cir. 1992), cert. denied, 510 U.S. 843 (1993).  Instead, it "determines only

27 whether, 'after viewing the evidence in the light most favorable to the prosecution, any

28 rational trier of fact could have found the essential elements of the crime beyond a

1  reasonable doubt.'"  <u>See</u> <u>id.</u> (quoting <u>Jackson</u>, 443 U.S. at 319).  Only if no rational trier of

2  fact could have found proof of guilt beyond a reasonable doubt may the writ be granted.

3  <u>See</u> <u>Jackson</u>, 443 U.S. at 324; <u>Payne</u>, 982 F.2d at 338.

4      This Court concludes that a rational trier of fact could have found that Petitioner

5  acted with reckless disregard for human life based on the numerous facts identified by the

6  state appellate court.  (Op. at 36.)  <u>Cf.</u> <u>Payne</u>, 982 F.2d at 338.  Thus, that court's rejection

7  of this claim was not contrary to or an unreasonable application of clearly established

8  federal law.  <u>See</u> U.S.C. § 2254(d)(1).

9      E.    Admission of 911 tape

10     Finally, Petitioner argues that the trial court erred in admitting the tape of the 911

11  call made by the victim's relatives following the victim's death.  He argues that his right to

12  due process was violated because prejudicial effect of the tape outweighed its probative

13  value.  (Pet. at 24.)

14     The admission of evidence is not subject to federal habeas review unless a specific

15  constitutional guarantee is violated or the error is of such magnitude that the result is a

16  denial of the fundamentally fair trial guaranteed by due process.  <u>See</u> <u>Henry v. Kernan</u>,

17  197 F.3d 1021, 1031 (9th Cir. 1999); <u>Colley v. Sumner</u>, 784 F.2d 984, 990 (9th Cir.), <u>cert.</u>

18  <u>denied</u>, 479 U.S. 839 (1986).  The Supreme Court "has not yet made a clear ruling that

19  admission of irrelevant or overtly prejudicial evidence constitutes a due process violation

20  sufficient to warrant issuance of the writ."  <u>Holley v. Yarborough</u>, 568 F.3d 1091, 1101

21  (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials

22  was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an

23  unreasonable application of, clearly established federal law under § 2254(d)).

24     Here, the state appellate court found that the 911 tape likely had little value.  (Op. at

25  12.)  The descriptions given by the callers of the intruders were, "if useful at all, . . .

26  redundant of other better evidence," and were not necessary given that "identity was not a

27  disputed issue in [the] case."  (<u>Id.</u>)  The state appellate court also found that the admission

28  of the call likely was prejudicial, as the jurors could hear "the voices of the victim's

1    distraught and traumatized family." (Id.)  Being presented with such evidence may have

2    prevented the jurors from examining the evidence in an impartial manner.  (Id.)

3         Notwithstanding these findings, this Court is bound by Ninth Circuit precedent

4    holding that there is not clearly established Supreme Court authority forbidding admission

5    of such evidence.  Holley, 568 F.3d at 1101.  Thus, it cannot be said that the state courts'

6    rejection of this claim was contrary to or an unreasonable application of clearly established

7    federal law.  See U.S.C. § 2254(d)(1).

8

9                              **CERTIFICATE OF APPEALABILITY**

10        The federal rules governing habeas cases brought by state prisoners have been

11   amended to require a district court that denies a habeas petition to grant or deny a

12   certificate of appealability ("COA") in its ruling.  See Rule 11(a), Rules Governing § 2254

13   Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).  Petitioner has not shown

14   "that jurists of reason would find it debatable whether the petition states a valid claim of

15   the denial of a constitutional right [or] that jurists of reason would find it debatable

16   whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529

17   U.S. 473, 484 (2000).  Accordingly, a COA will be denied on those grounds.

18

19                                    **CONCLUSION**

20        The Court concludes that Petitioner has not shown any violation of his federal

21   constitutional rights in the underlying state criminal proceedings.  Accordingly, the

22   petition for a writ of habeas corpus is denied.  The Clerk shall enter judgment and close

23   the file.

24        IT IS SO ORDERED.

25   DATED: _6/24/10_____

26                                          JEREMY FOGEL
                                            United States District Judge

27

28

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

ANTHONY CRAVER,

                     Petitioner,

  v.

ERNIE ROE, Warden,

                    Respondent.

_____/

Case Number: CV02-04629 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on ____7/19/10_____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Anthony Craver
CSP Lancaster
44750 60th street W.
Lancaster, Ca 93536

Dated: ____7/19/10_____

                    Richard W. Wieking, Clerk